**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID WEBB,

       Plaintiff - Appellant,

v.

TIMOTHY SCOTT, Police Officer at
Ogden City Police Department; FNU
MURRAY, Police Officer at Ogden City
Police Department; JON GREINER, Chief
of Police at Ogden City Police Department,

       Defendants - Appellees,

and

TERRY L. THOMPSON, Sheriff for
Weber County; ROBERT WEST, Sgt. at
Weber County Correctional Facility;
ALTON JOHNSON, Sgt. at Weber County
Correctional Facility; ANDREW FLATT,
Correctional Officer at Weber County
Correctional Facility; KEVIN MCCLEOD,
Undersheriff at Weber County Sheriff's
Office; KEVIN BURTON, Captain and
Corrections Division Chief Deputy at
Weber County Correctional Facility; FNU
GATES, Correctional Officer at Weber
County Correctional Facility,

       Defendants.

No. 15-4078
(D.C. No. 1:11-CV-00128-DB-DBP)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of

(continued)

_____

Before **LUCERO**, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

David Webb appeals the district court's grants of summary judgment and

qualified immunity in favor of Timothy Scott, Kevin Murray, and Jon Greiner

(collectively, "Ogden Defendants").  The district court certified its grant of summary

judgment as final under Fed. R. Civ. P. 54(b).  Exercising jurisdiction under 28

U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

**I**

Greiner is the former Ogden City Chief of Police, and Scott and Murray are

Ogden City police officers.  On July 20, 2011, Webb was driving in Ogden City

when Murray pulled him over for a traffic equipment violation.  According to

Murray's affidavit, as he was driving behind Webb it appeared that Webb's license

plate light may not have been functioning.  Webb contends that his license plate light

was functioning properly and points to evidence supporting that position.  Murray

counters that he could not confirm the malfunction while his headlights were shining

on Webb's license plate, but established that the light was not functioning after he

turned his headlights off.  A dash camera recording from the patrol car neither

confirms nor contradicts Murray's or Webb's claims due to the video's poor quality.

this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Murray arrested Webb without a warrant for the malfunctioning license plate light and took him to the Weber County Correctional Facility ("WCCF"). At Murray's request, Webb was strip searched during the booking process. Murray completed a Weber County "Probable Cause Affidavit" with information pertaining to Webb's arrest (the "Affidavit"). That form was placed in a filing receptacle in the WCCF's booking area to await a judge's approval or denial. According to the Weber County Sheriff, it was WCCF practice for a judge to review the affidavits in the filing receptacle at least every other day. But for unknown reasons, a judge never reviewed the Affidavit. Consequently, Webb remained in the WCCF for five days without receiving a judicial probable cause determination. Webb eventually received a hearing, during which the prosecutor struck all charges. He was then released.

Webb filed this pro se action raising claims under 42 U.S.C. §§ 1983, 1985, and 1986.[1] As relevant to this appeal, Webb challenged the legality of the traffic stop, his arrest, the strip search, and his detention without a prompt judicial probable cause determination.

Ogden Defendants moved for summary judgment on all claims. A magistrate judge issued a report and recommendation ("R&R") recommending the motion be granted. After Webb filed pro se objections to the R&R, the court appointed counsel.

---

[1] Webb fails to develop an argument regarding §§ 1985 and 1986, and thus those claims are waived.

It ordered Webb, through counsel, to file a new objection to the R&R.[2]  After reviewing Webb's objections and Ogden Defendants' responses, the district court adopted the R&R and granted Ogden Defendants summary judgment on all claims.

Although several claims remained pending against other defendants, Webb filed in this court a Petition for Permission to Appeal the summary judgment ruling in favor of Ogden Defendants.  We denied his petition.  <u>Webb v. Scott</u>, No. 15-602, order at 3 (10th Cir. April 21, 2015).  Ogden Defendants then moved the district court to certify its summary judgment ruling as final under Fed. R. Civ. P. 54(b). The court granted that motion, and Webb filed a notice of appeal.[3]

## II

On appeal, Webb challenges only the district court judgment pertaining to Murray.  He does not argue that the judgment was erroneous as to Scott.  And as to Greiner he only argues a violation of the Hatch Act.  This claim is waived because Webb's objections to the R&R stated that he did not object to dismissing his Hatch Act claims.  <u>Soliz v. Chater</u>, 82 F.3d 373, 375-76 (10th Cir. 1996) (arguments not raised in objections to R&R are waived).

---

[2] After filing objections to the R&R on his behalf, Webb's counsel withdrew, and he resumed proceeding pro se.

[3] Webb now argues that the summary judgment grant is not appealable because there is factual overlap between some of his claims against Ogden Defendants and several other defendants.  We disagree.  The rights and liabilities of Ogden Defendants were finally decided in the summary judgment order, <u>In re Integra Realty Res., Inc.</u>, 262 F.3d 1089, 1107 (10th Cir. 2001), and it was within the discretion of the district court to grant Rule 54(b) certification.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Webb. Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 766 (10th Cir. 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment based on qualified immunity, a plaintiff must "show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). Because Webb proceeds pro se, we liberally construe his filings. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## A

Webb contends there are disputed issues of material fact which preclude summary judgment on his claims that Murray, the arresting officer, lacked reasonable suspicion for the traffic stop. "A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Villa-Chaparro, 115 F.3d 797, 801 (10th Cir. 1997) (quotations omitted). The reasonableness of a traffic stop does not depend on the subjective motivation of the officer. Id. Rather, "[r]easonable suspicion requires that an officer provide some minimal level of objective justification." United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) (quotations omitted). "Moreover,

reasonable suspicion may be supported by an objectively reasonable good faith belief even if premised on factual error. [And] reasonable suspicion may rely on information less reliable than that required to show probable cause, and it need not be correct." Id. (quotations omitted).

Murray's affidavit indicates that, while following Webb's car, he turned his headlights off momentarily and observed that Webb's license plate light was not functioning. Webb argues that the dash cam video contradicts Murray's assertion that he turned his headlights off, but we agree with the district court that the video is inconclusive on that point. Webb also contends that the district court improperly disregarded evidence that his license plate light was functioning at the time of the stop. But a mistaken, yet reasonable, belief that a traffic violation has occurred is sufficient to support a traffic stop. Id.

Webb also argues that Murray intentionally turned off his wireless microphone when constitutional violations occurred. The video does not substantiate this claim. Instead, the video shows that Murray's wireless microphone was turned on before he exited the patrol car, and it stayed on until shortly after the passenger in Webb's car left the scene. This chronology is consistent with Murray's affidavit, in which he states it is his practice to turn off his wireless microphone just before he begins transporting an arrestee to jail when there are no other witnesses to be interviewed. Webb does not point to evidence inconsistent with Murray's account.

Because Webb has not pointed to any fact in the record that would allow a rational jury to find that Officer Murray lacked reasonable suspicion to stop him, we affirm the district court's grant of qualified immunity on this claim.[4]

**B**

We reach a different conclusion on Webb's illegal arrest claim. An arrest must be based on probable cause, which "exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quotations omitted). Probable cause "require[s] something more than a bare suspicion." Storey v. Taylor, 696 F.3d 987, 992 (10th Cir. 2012) (quotations omitted). The district court held there was no genuine dispute that Murray had probable cause to arrest Webb for having a non-functioning license plate light. The court pointed to Murray's belief that the light was not working; the fact (confirmed by the dash cam video) that Murray told Webb he was under arrest for that reason; Webb's failure to state during the stop that his license plate light was

_____

[4] Webb also contends that the district court abused its discretion by denying his motion to provide additional time for discovery regarding eight other prior traffic stops by Murray to flesh out a race-based claim of selective enforcement. Webb argues that the district court failed to consider the discretionary factors relevant to reopening discovery. See Smith v. United States, 834 F.2d 166, 169 (10th Cir. 1987) (listing permissible factors). Webb's contention is factually inaccurate. The district court considered whether discovery would likely lead to relevant evidence, id., and found that it would not. Webb does not provide any other basis suggesting that the district court abused its discretion by denying additional time.

functioning; and Murray's field report reiterating that he arrested Webb for a faulty equipment violation.

But Webb submitted evidence that his license plate light was functioning at the time of the stop. He stated in his verified complaint that he observed that the light was working from his position in the patrol car after he was arrested. In an affidavit opposing Ogden Defendants' summary judgment motion, Webb pointed to a portion of the dash cam video in which the headlights from Murray's patrol car are not shining on his license plate, and it appears that the plate is lighted. Webb argued in his counseled objections to the R&R that Murray failed to confirm that Webb's license plate light was malfunctioning after stopping Webb, and that the dash cam video does not show Murray looking at the license plate on his way to the driver's side of Webb's car. The district court determined that the video did not confirm whether the light was functioning, but nevertheless accepted as true Murray's assertion that the light was not functioning. And the court failed to consider Webb's assertions in his verified complaint that his license plate light was functioning at the time of the stop. Viewing the evidence in the light most favorable to Webb, Schneider, 717 F.3d at 766, a rational jury could find that the light was functioning, and that there was not any reasonably trustworthy information to allow a prudent person to believe it was not, York, 523 F.3d at 1210.

Murray argues against this conclusion by suggesting that Webb's arguments rely on "new evidence" submitted after the magistrate judge filed his R&R—and specifically evidence submitted in Webb's counseled objection to the R&R. But the

-8-

R&R considered allegations in Webb's verified complaint and in Webb's affidavit, and the dash cam video was in the summary judgment record. Moreover, the district court solicited Webb's supplemental, counseled objections to the R&R, and it did not state in its order adopting the R&R that it had refused to consider arguments made in those objections.

Murray alternatively argues that, even considering Webb's evidence that his license plate light was working at the time of the traffic stop, summary judgment was nonetheless appropriate. He cites an unpublished decision holding that an officer had reasonable suspicion to stop a car for having its headlights off, even though the headlights were, in fact, on. Valencia v. De Luca, 612 F. App'x 512, 516-17 (10th Cir. 2015). But consistent with Valencia, we have affirmed the district court's ruling that Murray had reasonable suspicion to stop Webb. Murray fails to address Webb's argument that he cannot meet the higher probable cause standard. Storey, 696 F.3d at 992.

Viewing the evidence in the light most favorable to Webb, we conclude there is a genuine issue of material fact whether Murray had probable cause to arrest Webb for having a non-functioning license plate light. We therefore reverse the district court's grant of summary judgment on this claim.[5]

---

[5] The district court did not grant Murray qualified immunity on this claim and Ogden Defendants do not argue that Murray is entitled to qualified immunity even if Webb demonstrated a Fourth Amendment violation. Consequently, we do not address that issue.

## C

Webb also alleges that the strip search performed at the WCCF violated the Fourth Amendment. Chapman v. Nichols, 989 F.2d 393, 395 (10th Cir. 1993) (strip searches of minor traffic offense detainees without particularized reasonable suspicion are unconstitutional). The parties first debate whether this issue is properly before us. Ogden Defendants argue that Webb did not raise this claim against Murray in his complaint. We disagree. The complaint asserted that Murray violated Webb's constitutional rights in connection with the strip search, and it alleged that Murray was present when the strip search occurred. Ogden Defendants also contend that Webb did not assert an illegal strip search claim against Murray in his summary judgment motion. This, too, is belied by the record. Finally, Ogden Defendants chide Webb for failing to assert his illegal strip search claim in opposition to their summary judgment motion, but they acknowledge that they did not address that claim in their motion. If they did not seek summary judgment on this claim, there was not any reason for Webb to argue against the same.

However, Ogden Defendants are correct that the summary judgment order did not rule on Webb's illegal strip search claim against Murray. But in light of Webb's inclusion of that claim in his complaint and in his summary judgment motion, we conclude that this omission was an oversight, rather than a holding that Webb failed to assert the claim against Murray.

If a district court fails to rule on a claim, we ordinarily remand to the district court to consider the claim in the first instance. See Tabor v. Hilti, Inc., 703 F.3d

-10-

1206, 1227 (10th Cir. 2013). We do not discern any reason to deviate from that practice with regard to this claim, the proper resolution of which is not "beyond any doubt." Singleton v. Wulff, 428 U.S. 106, 121 (1976). Ogden Defendants' sole argument is that Webb did not raise this claim against them. They do not address whether Webb has demonstrated a genuine issue of material fact that Murray violated his clearly established Fourth Amendment right. [6] And they do not urge any basis for this court to decide this issue in the first instance. Accordingly, we direct the district court to consider this claim on remand.

## D

Webb also appeals the grant of summary judgment and qualified immunity to Murray on Webb's claim of prolonged detention without probable cause. Under the Fourth Amendment, a person arrested without a warrant is entitled to a prompt judicial determination of probable cause to justify any significant pretrial detention. Gerstein v. Pugh, 420 U.S. 103, 114, 125 (1975). In general, a probable cause determination is sufficiently prompt if it occurs within 48 hours of an arrest. Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). If the arrestee does not receive a probable cause determination within 48 hours, the government bears the burden "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57.

---

[6] We note that the record reflects evidence that Murray personally participated in the alleged violation. Specifically, the summary judgment order cites a document indicating that Murray requested the strip search.

The parties do not dispute that Webb had a Fourth Amendment right to a prompt probable cause determination, and that such a right was clearly established during Webb's detention. Webb was detained at the WCCF for five days without a judicial probable cause determination, and Ogden Defendants do not identify a bona fide emergency or other extraordinary circumstance justifying his prolonged detention. Id. The district court nevertheless granted summary judgment and qualified immunity to Murray on this claim, holding there was not any evidence that Murray personally violated Webb's clearly established constitutional right because Murray relinquished custody of Webb when he was booked at the WCCF, and thus Murray was not personally involved in his prolonged detention.

Webb argues that Murray was responsible under Utah law for promptly bringing Webb before a magistrate. In Wilson v. Montano, 715 F.3d 847 (10th Cir. 2013), we looked to state law to determine who has a duty to ensure an arrestee receives a prompt judicial probable cause determination. Id. at 854. We referenced New Mexico law requiring that "[w]henever a peace officer makes an arrest without warrant for a misdemeanor within magistrate trial jurisdiction, he shall take the arrested person to the nearest available magistrate court without unnecessary delay." Id. at 855 (quoting N.M. Stat. § 35-5-1). Because the statute expressly assigned the duty to the arresting officer, the complaint in Wilson sufficiently alleged personal involvement by the arresting officer. Id. at 855.

The relevant Utah Statute does not expressly impose the same duty on an arresting officer. See Utah Code § 77-7-23(1)(a) ("When an arrest is made without a

warrant by a peace officer or private person, the person arrested shall be taken without unnecessary delay to the magistrate.").  But the Utah Supreme Court has observed that the person making an arrest has that duty.  McFarland v. Skaggs Cos., 678 P.2d 298, 301 (Utah 1984) ("In the case of a lawful arrest without a warrant, the person making the arrest must present the prisoner promptly before a magistrate.  An unreasonable delay in this respect will . . . render the actor liable for that portion of the imprisonment which is in excess of the reasonable period allowed for such presentment." (quotation omitted)).  Based on this observation, arresting officers in Utah bear responsibility for a judicial probable cause determination, and thus Murray was personally involved in Webb's alleged prolonged detention.

That Murray relinquished control of Webb at the WCCF does not alter our analysis.  In Wilson, the transfer of custody to authorities at the county jail did not negate the arresting officer's duty under state law to take the arrestee promptly before a judicial officer.  Rather, we concluded in Wilson that the complaint stated a plausible prolonged detention claim against both the arresting officer and the jail authorities.  715 F.3d at 855, 858.  Ogden Defendants do not cite any law weighing against joint responsibility.

Because Murray was personally involved in the alleged deprivation of Webb's Fourth Amendment right to a prompt judicial determination of probable cause, and because Webb has presented evidence upon which a reasonable jury could find facts supporting a violation of his clearly established constitutional right, Estate of Booker,

-13-

745 F.3d at 411, Murray is not entitled to qualified immunity on this claim. For the

same reasons, Murray is not entitled to summary judgment.[7]

---

[7] Webb raises several other claims that are procedurally barred. A pro se party must comply with the same procedural rules as other litigants. Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005). Webb admits that he did not raise his argument that Ogden Defendants' counsel had a conflict of interest below, nor does he cite the record to support his contention that he raised a First Amendment claim or a claim for destruction of evidence below, 10th Cir. R. 28.2(C)(2), and our review of the record does not reveal any such instances. These claims are waived. Somerlott v. Cherokee Nation Distribs., Inc., 686 F.3d 1144, 1150 (10th Cir. 2012) (issue is preserved if party alerts district court to the issue and seeks a ruling). In addition, in his counseled objections to the R&R Webb: (1) stated that he did not object to dismissing his claims of intentional infliction of emotional distress, excessive force, conspiracy, failure to intervene, violation of the Hatch Act, violation of the Fifth Amendment, and his state-law claims; (2) stated that his pro se complaint should be construed as an individual action, rather than a class action; and (3) failed to argue, as he does before us, that Murray's qualified immunity was abrogated by 42 U.S.C. § 2000d-7. These claims are all waived. Soliz, 82 F.3d at 375-76. Webb also inadequately develops his arguments that the district court erred in denying leave to file both an amended complaint and a supplemental opposition to the motions for summary judgment. These arguments are likewise waived. Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 623-24 (10th Cir. 1998) ("[A]rguments not set forth fully in the opening brief are waived.").

# III

We **REVERSE** the district court's grant of summary judgment to Murray on Webb's illegal arrest claim and its grants of summary judgment and qualified immunity to Murray on Webb's prolonged detention claim. We **REMAND** these claims for further proceedings in the district court. On remand, we further direct the district court to consider Webb's illegal strip search claim against Murray. We otherwise **AFFIRM**. We **DENY** Webb's motion for sanctions.

Entered for the Court


Carlos F. Lucero
Circuit Judge